IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ____ D.C.
05 SEP 12 PM 12: 05
THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | |
|---|---|
| MARK CRAIG BAGWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-2576 Ml/P |
| ) | |
| MEMPHIS-SHELBY COUNTY AIRPORT ) | |
| AUTHORITY, LARRY COX, and ) | |
| MIKE HILL, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss, filed November 23, 2004. Plaintiff responded in opposition on January 11, 2005. Defendants filed a reply to Plaintiff's opposition on January 26, 2005. For the following reasons, the Court GRANTS in part and DENIES in part Defendants' motion.

**I. BACKGROUND**

This case arises from Plaintiff Mark Craig Bagwell's allegations that his employer, Memphis-Shelby County Airport Authority ("MSCAA"), failed to pay him overtime and retaliated against him during the course of his employment. According to Plaintiff's Complaint, Plaintiff was hired by MSCAA as a maintenance mechanic on November 23, 1998, and was promoted to

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 9-12-05

64

the position of maintenance engineer approximately eleven months later. (Pl.'s Compl., ¶ 11.) While Plaintiff was employed at MSCAA, Defendant Larry Cox served as MSCAA's President and Chief Executive Officer. (Id., ¶ 10.) Defendant Mike Hill was the supervisor of MSCAA's Engineering Department and was Plaintiff's immediate supervisor. (Id., ¶ 9.)

During January of 2001, Plaintiff filed a complaint for overtime payments with the Wage and Hour Division of the United States Department of Labor ("WHD").[1] (Id., ¶ 12.) Prior to filing a complaint with the WHD, Plaintiff received favorable job performance evaluations that noted that Plaintiff "exceed[ed] job requirements." (Pl.'s Compl., ¶ 11.)

Plaintiff alleges he was retaliated against after filing his WHD complaint. In particular, Plaintiff alleges that since April of 2003, the date Mr. Hill learned that Plaintiff filed a complaint with the WHD, Plaintiff has been subjected to the following retaliatory acts: (1) In June of 2003, Mr. Hill issued written work orders to Plaintiff and Plaintiff's partner, but to no other co-workers; (2) The next day, Plaintiff received written work orders before his shift began, while none of his co-workers received work orders before the beginning of their shift; (3) On approximately September 10, 2003, Plaintiff received a written

---

[1] The WHD concluded its investigation of Plaintiff's allegations against MSCAA on approximately February 27, 2004. (Pl.'s Compl., ¶ 12.)

-2-

reprimand from Mr. Hill for "walking out of the Supervisor's office, before being dismissed;" (4) On December 22, 2003, Mr. Hill rescinded Plaintiff's pre-approved Christmas vacation time; (5) On approximately January 8, 2004, Plaintiff received a written reprimand after reporting another employee's unauthorized use of a MSCAA vehicle because of Plaintiff's "inability to communicate with [his] supervisor and unwillingness to follow the chain of command;"[2] (6) On approximately June 10, 2004, Mr. Hill rated Plaintiff's overall job performance between "meets job requirements" and "fails to meet job requirements;" and (7) On an unspecified date, Mr. Hill assigned Plaintiff work that MSCAA's doctor had previously restricted Plaintiff from performing. (Pl.'s Compl., ¶ 13-14.)  In addition, on February 18, 2005, Defendants terminated Plaintiff's employment after Plaintiff submitted, during discovery in the instant litigation, tape recorded conversations of himself and Mr. Hill about Plaintiff's safety concerns regarding high-pressured gas pipelines in the tunnels.[3]  (Pl.'s Supp. Pleading to the Compl., ¶ 5,7-8.)

---

[2] Plaintiff alleges that the employee he reported was Mr. Hill's neighbor.

[3] In particular, Plaintiff alleged that, in October of 2004, he reported to Mr. Hill eight specific violations and two potential violations involving the "high-pressured" gas pipelines and was subsequently told by Mr. Hill not to discuss his safety concerns with any contractor or code inspector. (Pl.'s Supp. Pleading to the Compl., ¶ 5.)  Plaintiff further alleged that he did not discuss the safety concerns with any other authorities because he feared he would lose his job. (Id., ¶ 6.) According
(continued ...)

-3-

On July 28, 2004, Plaintiff filed a complaint in this action alleging that MSCAA was liable under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for failing to pay Plaintiff overtime and for retaliating against Plaintiff; that Mr. Cox and Mr. Hill were liable both individually and in their official capacities under 42 U.S.C. § 1983 for depriving Plaintiff of his rights and privileges secured by the FLSA; that Mr. Cox and MSCAA were liable for negligent supervision; and that Mr. Hill was liable for intentional infliction of emotional distress under Tennessee common law. On March 30, 2005, Plaintiff filed a Supplemental Pleading to the Complaint that charged all of the Defendants with committing the common law tort of retaliatory discharge and terminating Plaintiff's employment in violation of the Tennessee Whistleblower Act codified as Tenn. Code Ann. § 50-1-304.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the plaintiff's complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a

---

(continued ...)
to Plaintiff, a substantial factor in Defendants' decision to terminate Plaintiff's employment was Plaintiff's "refusal to remain silent regarding [the violations] of federal, state and/or local safety regulations, and employee's [sic] statutory rights to overtime pay." (Id., ¶ 8.)

court must treat all of the well-pleaded allegations of the complaint as true, Saylor v. Parker Seal Co., 975 F.2d 252, 254 (6th Cir. 1992), and must construe all of the allegations in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### III. ANALYSIS

Defendants move to dismiss (1) Plaintiff's claims of retaliation under the FLSA; (2) Plaintiff's claims under 42 U.S.C. § 1983 for deprivation of rights and privileges secured by federal law; and (3) Plaintiff's claims for negligent supervision and intentional infliction of emotional distress under Tennessee common law. The Court will address each of Defendants' contentions in turn.

#### A. Retaliation Under the FLSA

The FLSA makes it unlawful to discharge or otherwise discriminate against "any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). In the absence of direct evidence of retaliation, a claim of

unlawful retaliation under the FLSA is analyzed through the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). McDaniel v. Transcender, LLC, 119 Fed. Appx. 774, 779 (6th Cir. Jan. 31, 2005) (citing Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (10th Cir. 1997). Therefore, Plaintiff must first establish a *prima facie* case of retaliation. Id. In order to establish a *prima facie* case of retaliation under the FLSA, Plaintiff must demonstrate: (1) that he engaged in activity protected by the FLSA; (2) that the employer subsequently took adverse action against Plaintiff; and (3) a causal connection between Plaintiff's protected activity and the employer's adverse action. Id. (citing Williams v. General Motors Corp., 187 F.3d 553, 568 (6th Cir. 1999)).

Defendants contend that Plaintiff cannot establish a *prima facie* case of FLSA retaliation because Plaintiff has not alleged facts to demonstrate that he suffered an adverse employment action. In order for Plaintiff to demonstrate that he suffered an adverse employment action, he must show "a materially adverse change in the terms" of his employment. White v. Burlington Northern & Santa Fe Ry. Co., 364 F.3d 789, 797 (6th Cir. 2004) (internal quotation marks omitted). The Court finds that Plaintiff has met this requirement, by alleging in his Supplemental Pleading to the Complaint that he was terminated from employment on February 18, 2005, because, among other

-6-

things, he refused to remain silent regarding Defendants' purported violation of his statutory rights to overtime pay. (Pl.'s Supp. Pleading to the Compl., ¶ 8.) Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's claim of unlawful retaliation under the FLSA.

### B. 42 U.S.C. § 1983

In his response to Defendants' Motion to Dismiss, Plaintiff conceded that his § 1983 claims should be dismissed. Accordingly, the Court GRANTS Defendants' motion to dismiss these claims.

### C. Negligent Supervision

Defendants next move to dismiss Plaintiff's negligent supervision claim against MSCAA and Mr. Cox. Defendants first move to dismiss Plaintiff's negligent supervision claim against Mr. Cox pursuant to Tennessee Code Annotated § 29-20-201(b)(2). That statute provides that:

> All members of boards, commissions, agencies, authorities, and other governing bodies of any governmental entity, created by public or private act, whether compensated or not, shall be immune from suit arising from the conduct of the affairs of such board, commission, agency, authority, or other governing body. Such immunity from suit shall be removed when such conduct amounts to willful, wanton, or gross negligence.

Tenn. Code Ann. § 29-20-201(b)(2). Defendants specifically contend that Plaintiff's negligent supervision claim against Mr. Cox must be dismissed because Plaintiff did not allege that

-7-

Defendant Cox was acting willfully, wantonly, or with gross negligence in failing to take corrective action in regards to the retaliatory conduct of the management team members at MSCAA. Upon review of the parties' submissions as well as the pleadings in this case, the Court finds that the Defendants' contention is well-taken and accordingly GRANTS Defendants' motion to dismiss Plaintiff's negligent supervision claim against Mr. Cox.

Defendants also move to dismiss Plaintiff's negligent supervision claim against MSCAA pursuant to Tennessee Code Annotated § 29-20-205, which provides, in pertinent part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> > (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused ....

Tenn. Code Ann. § 29-20-205. Tennessee applies the "planning-operational" test to determine which governmental acts are within the scope of the "discretionary function" exception contained in Tennessee Code Annotated § 29-20-205(1). <u>Bowers v. City of Chattanooga</u>, 826 S.W.2d 427, 430 (Tenn. 1992). "Under the planning-operational test, decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and,

-8-

therefore, do not give rise to immunity." Id. The court explained the distinction as follows:

> A consideration of the decision-making process, as well as the factors influencing a particular decision, will often reveal whether that decision is to be viewed as planning or operational. If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it strongly suggests the result is a planning decision. These decisions often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules.
>
> On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often implement prior planning decisions, are not "discretionary functions" within the meaning of the Tennessee Governmental Tort Liability Act. In other words, "the discretionary function exception [will] not apply to a claim that government employees failed to comply with regulations or policies designed to guide their actions in a particular situation."

Id. at 431 (citations omitted).

Defendants contend that MSCAA retains immunity from suit because Plaintiff's negligent supervision claim involves discretionary acts concerning Mr. Cox's delegation of managerial functions to Mr. Hill and the rest of MSCAA's management team. Plaintiff contends, however, that MSCAA's failure to take

corrective measures following its management team's adverse employment actions against Plaintiff did not involve the performance of a discretionary function and therefore MSCAA may be sued for its negligence pursuant to Tenn. Code Ann. § 29-20-205. In particular, Plaintiff asserts that Mr. Cox's "duty to supervise and control the daily activities in [accordance] with [the] preexisting policies and procedures of the Memphis Shelby County Airport [Authority] was an operational act...." (Pl.'s Resp. to Defs.' Mot. to Dismiss, at 7.)

Tennessee Supreme Court and Court of Appeals decisions issued after Bowers have clarified that a governmental entity's broad discretion to adopt or implement a policy cannot give rise to liability for negligence under Tenn. Code Ann. § 29-20-205. See, e.g., Limbaugh v. Coffee Med. Ctr., 59 S.W.3d 73, 85 (Tenn. 2001) (finding that a "nursing home's broad discretion to implement a policy governing the questions of whether and how to discipline combative employees is indeed a policy determination that cannot give rise to tort liability"); Jane Doe A v. Coffee County Bd. of Educ., 852 S.W.2d 899, 908 (Tenn. Ct. App. 1992) ("Adopting policies and procedures governing the hiring of employees is clearly a planning function that will not give rise to liability under Tenn. Code Ann. § 29-20-205."). Moreover, where employees follow an established policy, governmental immunity will not be abrogated. Limbaugh, 59 S.W.3d at 85 ("If the policy, regulation, or other standard of procedure mandates

-10-

specific conduct, then any employee reasonably complying with that direction will not abrogate the entity's immunity if the action furthers the underlying policies of the regulation."); Jane Doe A, 852 S.W.2d at 908 ("[H]iring decisions made in conformance with applicable statutes, ordinances, policies and procedures are not amenable to suit.").

However, the Tennessee courts have also found that decisions that fail to comply with the applicable policies and procedures are operational in nature and may give rise to liability for negligence by the governmental entity under Tenn. Code Ann. § 29-20-205. See, e.g., Chase v. City of Memphis, 971 S.W.2d 380, 384 (Tenn. 1998) ("A negligent act or omission is operational in nature and not subject to immunity when the act or omission occurs: (1) in the absence of a formulated policy guiding the conduct or omission; or (2) when the conduct deviates from an established plan or policy."); Limbaugh, 59 S.W.3d at 85 ("If ... an employee does not act reasonably but pursues a course of conduct that violates mandatory regulation, the discretionary function exception will not apply because the action would be contrary to the entity's established policy."); Jane Doe A, 852 S.W.2d at 908 ("[D]ecisions that fail to comply with applicable legal requirements may give rise to liability if the failure to follow the requirements is the proximate cause of injury.").

In Jane Doe A, the Tennessee Court of Appeals was presented with the question of whether a school board was immune from a

negligent hiring claim under the discretionary function exception. 852 S.W.2d at 908. The court concluded that because the record contained insufficient evidence regarding the personnel requirements, policies, or procedures that the local school board may have adopted, the school board had not demonstrated that they were entitled to judgment as a matter of law based on the discretionary function exception. Id. at 909.

Likewise, here, the Court has no information about what policies MSCAA may have adopted in regard to taking corrective measures in response to unlawful retaliation against employees, or whether these policies have been followed, because the Court is without the benefit of material outside the pleadings in evaluating Defendants' motion to dismiss. Accordingly, the Court is not capable of determining whether MSCAA may take advantage of the discretionary function exception at the present time. The Court therefore DENIES this portion of Defendants' motion to dismiss.[4]

---

[4] Defendants also rely on Hays v. Patton-Tully Transp. Co., for the proposition that a negligent supervision claim can only be brought for tortious conduct that is independently viable under the common law. 844 F.Supp. 1221, 1223-24 (W.D. Tenn. 1993) (finding in context of Title VII sexual harassment claim that "[a] negligent supervision claim cannot be based solely upon an underlying claim of sexual harassment *per se,* because the effect would be to impose liability on employers for failing to prevent a harm that is not a cognizable injury under the common law."). Defendants therefore argue that Plaintiff's negligent supervision claim must be dismissed because he has not alleged in his Complaint any independently actionable tortious conduct against Mr. Cox, apart from his statutorily based FLSA retaliation claim. It should be noted that Plaintiff alleges a

## D. Intentional Infliction of Emotional Distress

Defendants next move to dismiss Plaintiff's intentional infliction of emotional distress claim against Defendant Hill. In Tennessee, three elements must be shown to sustain a claim of intentional infliction of emotional distress: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). The Court applies a "high threshold standard" to determine whether particular conduct is sufficiently outrageous to incur liability:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

---

claim of common law retaliatory discharge against all Defendants in his Supplemental Pleading.

Id. at 622-23 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). A cause of action lies only when "the distress is so severe that no reasonable [person] could be expected to endure it." Miller v. Willbanks, 8 S.W.3d 607, 615 n.4 (Tenn. 1999) (quoting Restatement (Second) of Torts § 46 cmt. j).

Plaintiff describes Defendant Hill's conduct as "daily, consistent harassing behavior" akin to "slow torture." (Pl. Res. Def. Mot. Dismiss at 8.) It is clear to the Court, however, that none of the particular acts of which Plaintiff complains rise to the level of outrageousness necessary to state a claim for intentional infliction of emotional distress.

The conduct alleged—issuance of written work orders and reprimands, denial of vacation time, disregard for doctor's orders, and termination of employment—cannot be characterized as extreme, atrocious or "utterly intolerable in a civilized community." Bain, 936 S.W.2d at 623 (quoting Restatement (Second) of Torts § 46 cmt. d). Moreover, Plaintiff's status as an "at-will employee" (Pl. Supp. Pleading to the Compl. ¶ 2) precludes a claim of intentional infliction of emotional distress based on termination of employment. See Reid v. Sears, Roebuck & Co., 790 F.2d 453, 462 (6th Cir. 1986) (at-will employee cannot maintain claim for intentional infliction of emotional distress against employer based on termination of employment) (citation omitted).

-14-

Treating Plaintiff's allegations as true and construing them in the light most favorable to the Plaintiff, the Court finds that Defendants' alleged conduct, if proven, would not rise to the level of outrageousness necessary to maintain a claim of intentional infliction of emotional distress. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's common law claim of intentional infliction of emotional distress.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's claims brought under 42 U.S.C. § 1983 against Mr. Hill and Mr. Cox, Plaintiff's negligent supervision claim against Mr. Cox, and Plaintiff's intentional infliction of emotional distress claim against Mr. Hill. The Court DENIES Defendants' motion to dismiss Plaintiff's claims of unlawful retaliation under the FLSA against MSCAA and negligent supervision against MSCAA.[5]

So ORDERED this 12 day of September, 2005.

_____
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

[5] The following claims, therefore remain: Counts 1, 2, and 5 of the Complaint and the common law and statutory claims of retaliatory discharge in the Supplemental Pleading to the Complaint.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 64 in case 2:04-CV-02576 was distributed by fax, mail, or direct printing on September 12, 2005 to the parties listed.

---

David P. Jaqua
BUTLER SNOW O'MARA STEVENS & CANADA, PLLC
6075 Poplar Ave.
Ste. 500
Memphis, TN 38119

Todd P. Photopulos
BUTLER SNOW O'MARA STEVENS & CANADA, PLLC- Memphis
6075 Poplar Ave.
Ste. 500
Memphis, TN 38119

Dwight G. McQuirter
DWIGHT G. MCQUIRTER, PLLC
P.O. Box 243
Spring Hill, TN 37174

Honorable Jon McCalla
US DISTRICT COURT